FILED
MAR 3 1 2008

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| THE FIRST NATIONAL BANK IN SIOUX FALLS, a national banking corporation, | \* \* \* | CIV. 06-4101 |
| Plaintiff, | \* \* | MEMORANDUM OPINION AND ORDER RE: MOTION |
| vs. | \* \* | FOR PARTIAL SUMMARY JUDGMENT |
| FIRST NATIONAL BANK SOUTH DAKOTA, SPC, INC. d/b/a FIRST NATIONAL MERCHANT SOLUTIONS, and FIRST NATIONAL BANK OF OMAHA, | \* \* \* \* \* \* | |
| Defendants. | \* \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

In its Second Amended Complaint (Doc. 61) the Plaintiff, The First National Bank in Sioux Falls (FNB Sioux Falls), seeks relief for alleged violations of the Lanham Act, common law service mark infringement, and common law unfair competition, as well as for the alleged violation of a preliminary injunction previously issued by this Court in *The First National Bank In Sioux Falls v. First National Bank South Dakota,* No. 95-4116 (D.S.D. April 14, 1997).[1] Defendants First National Bank South Dakota (FNB South Dakota), SPC, Inc. (SPC) and First National Bank Of Omaha (FNBO), have moved for partial summary judgment on all claims against FNB South Dakota and SPC and on all claims except claims of trademark infringement against FNBO. Doc. 74. In its memorandum in opposition to Defendants' Motion for Partial Summary Judgment FNB Sioux Falls concedes that amendments to the Federal Trademark Law Dilution Revision Act clearly establish that a claim for dilution cannot be maintained unless the plaintiff's trademark is "nationally famous" and that the changes to the law preclude the dilution claim. Also pending before this Court is Defendants' Motion Regarding Expert Witness Reports. Doc. 125.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, The First National Bank in Sioux Falls (FNB Sioux Falls), is a nationally chartered

---

[1] This decision was affirmed in *First Nat'l Bank, In Sioux Falls v. First Nat'l Bank, South Dakota,* 153 F.3d 885 (8th Cir. 1998).

bank with its principal offices in Sioux Falls, South Dakota. Defendant, First National Bank South Dakota (FNB South Dakota) is a nationally charted bank with its principal offices in Yankton, South Dakota. Defendant SPC is a Nebraska corporation with its principal offices in Omaha, Nebraska, which does business under the name "First National Merchant Solutions." Defendant FNBO is a nationally chartered bank with its principal offices in Omaha, Nebraska.

FNB Sioux Falls offers retail banking services in Sioux Falls, South Dakota and the surrounding communities and uses the composite mark consisting of the Flying F logo in a pentagonal shape. FNB Sioux Falls contends that in advertising and promotion it also uses separately, "First National,""First National Bank," and "The First National Bank in Sioux Falls." FNB Sioux Falls is associated with the Baker family.

FNB South Dakota offers full service banking services throughout portions of South Dakota under the service mark "First National Bank South Dakota." FNB South Dakota uses a circle 1 logo. SPC offers credit and debit card transaction processing services to merchants throughout the United States under the service mark "First National Merchant Solutions."

In 1994, FNB South Dakota advertised in the Yankton newspaper, the Yankton Press and Dakotan, and on Yankton radio stations referring to FNBSD as "First National Bank." In April and May of 1995, FNB South Dakota ran a newspaper advertisement on several different occasions in the Sioux Falls Argus Leader promoting a certificate of deposit. In June of 1995, FNB Sioux Falls filed CIV. 95-4116 against FNB South Dakota in this Court alleging that FNB South Dakota had infringed upon its common law rights in the service marks "First National," "First National Bank," and "First National Bank in Sioux Falls."

On April 14, 1997, this Court permanently enjoined FNB South Dakota "from using in any manner or fashion whatsoever, within a ten-mile radius of the main offices of the plaintiff, The First National Bank of Sioux Falls, located at the corner of 9th Street and Phillips Avenue in downtown Sioux Falls, South Dakota, the service marks "First National," "First National Bank," and "The First National Bank in Sioux Falls," or any other name, mark, or designation confusingly similar to plaintiff's three marks." This Court denied a permanent injunction that would have enjoined FNB South Dakota "from using its full name, 'First National Bank South Dakota,' within a ten-mile radius of the main office of [FNB Sioux Falls].

2

FNB Sioux Falls alleges that in the mid 1990s, FNB South Dakota had indicated that it had plans to open a branch at the corner of 57th Street and Cliff Avenue. However, it is undisputed that no branch was ever opened by FNB South Dakota at this location. In July 2005 FNB South Dakota applied with the Office of the Comptroller of the Currency for a branch to be located at 100 South Dakota Avenue, Sioux Falls, South Dakota. This location is two blocks from the main office and branch of FNB Sioux Falls.

In November of 2002, counsel for FNB Sioux Falls wrote Randy Johnson, President of FNB South Dakota, and requested that FNB South Dakota choose an alternative name for the branch it intended opening in Sioux Falls. The letter states that FNB Sioux Falls was "extremely concerned about increased customer confusion and dilution of the service marks that the bank possesses in the ten-mile radius from its main location." The November 2002 correspondence further advised that FNB Sioux Falls intended "to implement a process to collect, as a part of the business records kept in the ordinary course at the bank, information on consumer confusion between" FNB South Dakota and FNB Sioux Falls. FNB Sioux Falls has maintained a confusion log for the time period of December 2005 through early May 2007 which FNB Sioux Falls contends records over 1,000 instances of actual confusion by customers of both FNB Sioux Falls and FNB South Dakota, the public, and vendors. FNB South Dakota challenges the admissibility of the confusion log.

Principles of Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

Once the moving party has met its burden, the non-moving party may not rest on the

allegations of its pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 257; *City of Mt. Pleasant v. Associated Elec. Coop., Inc.*, 838 F.2d 268, 273-74 (8th Cir. 1988). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When a trademark dispute centers on the proper interpretation to be given to the facts, rather than on the facts themselves, summary disposition is appropriate. *Duluth News-Tribune. v. Mesabi Publ'g Co.*, 84 F.3d 1093, 1099 (8th Cir. 1996); *Woodsmith Publ'g. Co. v. Meredith Corp.*, 904 F.2d 1244, 1247 (8th Cir. 1990).

## WHETHER RES JUDICATA BARS FNB SIOUX FALLS' CLAIMS AGAINST FNB SOUTH DAKOTA FOR SERVICE MARK INFRINGMENT, FALSE DESIGNATION AND DILUTION UNDER THE LANHAM ACT, AND SERVICE MARK INFRINGEMENT AND UNFAIR COMPETITION UNDER THE COMMON LAW?

In support of its res judicata argument, FNB South Dakota states that FNB Sioux Falls previously brought CIV 95-4116 in this Court against FNB South Dakota, claiming that FNB South Dakota's alleged use of the trademarks "First National," "First National Bank" and "First National Bank South Dakota" constituted common law trademark infringement, infringement of a registered trademark, infringement of trade name and trade identity, common law unfair competition and false and misleading designations of origin. FNB South Dakota further states that each of these claims were based upon FNB Sioux Falls' purported rights in the trademarks "First National," "First National Bank" and "The First National Bank in Sioux Falls." FNB South Dakota argues that FNB Sioux Falls' present claims for service mark infringement, false designation and dilution under the LanhamAct, and service mark infringement and unfair competition under common law, involve the exact same trademarks that were at issue in CIV 95-4116, and that FNB Sioux Falls has already had its day in court, and this Court has expressly rejected its claim that a likelihood of confusion exists between FNB South Dakota's trademark "First National Bank South Dakota" and FNB South Dakota's trademarks "First National," "First National Bank" and "The First National Bank in Sioux Falls." FNB South Dakota also relies upon *S. S. Kresge Co. v. Winget Kickernick Co.*, 96 F.2d 978 (8th Cir. 1938), as support for the proposition that although one may surmise that additional

evidence, if it had been available, may have had an effect on the outcome of an earlier adjudication regarding trademark infringement, the existence of this additional evidence is not a basis to avoid the effect of the earlier adjudication.

The doctrine of res judicata bars a later suit when (1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involved the same cause of action; and (4) both suits involved the same parties or their privies. *Lovell v. Mixon*, 719 F.2d 1373, 1376 (8th Cir.1983); *United States E.P.A. v. City of Green Forest*, 921 F.2d 1394, 1403 (8th Cir.1990). The res judicata effect of a prior judgment is a question of law. *See United States ex rel. Yankton Sioux Tribe v. Gambler's Supply, Inc.*, 925 F.Supp. 658, 663 (D.S.D. 1996). The purpose of the doctrine of res judicata is that a final judgment on the merits of an action precludes relitigation of issues that were or could have been raised in that action*Id*. However, the application of this doctrine is limited when the controlling facts have changed between the first suit and second suit. *See, e.g., Tyler v. Harper*, 744 F.2d 653, 657 (8th Cir. 1984)("Collateral estoppel is no defense when the controlling facts have changed in between the first and second suits."). The related principle of collateral estoppel or issue preclusion may also bar relitigation of the same issue or issues in a subsequent action.

The Eight Circuit has relied upon the position of the Restatement (Second) of Judgments[2] in determining whether two causes of action are the same for res judicata purposes; Generally, a claim is barred by res judicata if it arises out of the same nucleus of operative facts as the prior claim.

---

[2] The Restatement (Second) of Judgments § 24 (1982) provides:

> (1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar (see §§ 18, 19), the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

> (2) What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

*Lane v. Peterson*, 899 F.2d 737, 742 (8th Cir. 1990). Comment f to the Restatement (Second) of Judgments § 24 provides in part: "Material operative facts occurring after the decision of an action with respect to the same subject matter may in themselves, or taken in conjunction with the antecedent facts, comprise a transaction which may be made the basis of a second action not precluded by the first."

Although res judicata may appropriately be applied in trademark cases[3], it is also true that "[i]n trademark cases, res judicata must be carefully applied, since the facts of trademark usage and consumer recognition may have changed since the prior judgment was rendered." 6 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 32:88 (4th Ed. 2007). In *Minarik Elec. Co. v. Electro Sales Co., Inc.*, 223 F.Supp.2d 334 (D.Mass. 2002), the district court in an action alleging trademark false designation of origin, cybersquatting, unfair competition and dilution, relied upon Section 24 of the Restatement (Second) of Judgments in its analysis and rejection of res judicata when five of the seven claims brought in the action had been raised in an earlier action. The district court in the *Minarik* case observed, "Even when two suits concern 'essentially the same course of wrongful conduct,' the first suit cannot be seen as precluding 'claims which did not even then exist and which could not possibly have been sued upon in the previous case.'" *Minarik*, 223 F.Supp.2d at 338 (quoting *Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 327-28 (1955)). *See also, Mayer/Berkshire Corp. v. Berkshire Fashions, Inc.*, 424 F.3d 1229 (Fed.Cir. 2005)(res judicata defense in registration proceeding[4] rejected when opponent of registration presented evidence of changed circumstances in the five-year period after the district court's judgment in infringement action that may be relevant to the issue of likelihood of confusion in the opposition proceeding); *Plus Products v. Natural Organics, Inc.*, 223 U.S.P.Q. 27 (N.D.N.Y. 1984)(Court of Custom and Patent Appeals' determination of likelihood of confusion made five

---

[3]Defendants cite to *S.S. Krege Co. V. Winget Kickernick Co.*, 96 F.2d 978, 988 (8th Cir. 1938), a patent and trademark infringement case in which the Eighth Circuit Court of Appeals applied the doctrine of res judicata where there had been an earlier adjudication on an "identical issue" presented by a plaintiff in privity with the plaintiff in the earlier decision.

[4] This Court acknowledges that the analysis of likelihood of confusion is different in registration proceedings than in an infringement action where the context of actual usage is relevant. *See Mayer/Berkshire Corp. v. Berkshire Fashions, Inc.*, 424 F.3d at 1232-1233.

years prior to infringement action may be totally irrelevant to new market environment, precluding summary judgment on grounds of collateral estoppel); *Miss Universe, Inc. v. Kidney Found. of New York, Inc.*, 214 U.S.P.Q. 199 (S.D.N.Y. 1981)(in trademark infringement and unfair competition case court determines that policies underlying doctrines of res judicata and collateral estoppel are not served by their application when it is shown that circumstances material to the determination of likelihood of confusion in an earlier case have changed sufficiently so that injunctive relief may now be warranted).

Consideration of the factors of § 24 of The Restatement (Second) of Judgments, *i.e.*, "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage," leads the Court to conclude that this action is not barred by res judicata. More than a decade has passed between the commencement of the initial and the current litigation. Given the passage of time and change in events the two actions must be characterized as separated by time, not related by time. *See Minarik*, 223 F.Supp.2d at 339 (two suits deemed not related by time when first action involved actions of the defendant up to November 18, 1996, and second action involved conduct of the defendant occurring subsequent to the termination of a distribution agreement in 1997). When the CIV. 95-4116 action was before this Court, the focus of the action was on the activities of FNB South Dakota, which was located in Yankton, South Dakota, but which had acquired an option to purchase 1.25 acres of land in Sioux Falls approximately one mile from FNB Sioux Falls' 57th Street branch bank. FNB Sioux Falls' branch is now actually located two blocks from the main office of FNB Sioux Falls. Also, Defendant SPC, Inc. d/b/a First National Merchant Solutions, which was not a defendant in the earlier action, operates out of an office on South Minnesota Avenue. These are significant changes in terms of potential impact on the likelihood of consumer confusion.

At the time of the court trial in the first action, FNB Sioux Falls had sought federal registration of its service mark, "The First National Bank in Sioux Falls," but had not yet received official written notification from the United States Patent and Trademark office that its amended application and been approved. Plaintiff now has a federally registered service mark for "The First National Bank in Sioux Falls" which was registered on March 25, 1997. Also, a Section 15

7

Declaration of Incontestability of Mark was filed by Plaintiff as to this service mark on December 16, 2002. The strength of FNB Sioux Falls' marks may be even stronger at this time[5] as compared to 1995.

The activity of FNB South Dakota which was the subject of FNB Sioux Falls' claims of infringement of common law trademark rights and infringement under the Lanham Act differs from the activity which is the subject of the current action. In the earlier action, FNB South Dakota had advertised in 1994 in the Yankton newspaper, the Yankton Press and Dakotan and on Yankton radio station referring to itself as "First National Bank." In April and May of 1995, FNB South Dakota had run one newspaper advertisement on different occasions in the Sioux Falls Argus Leader promoting a certificate of deposit and utilizing a headline referring to "Commitment." This advertisement included FNB South Dakota's logo, underneath which appeared "first national bank" followed on the next line by "south Dakota."

In the current action FNB Sioux Falls alleges customer confusion arising from the FNB South Dakota's loan coupon book which does not use the "circle 1" logo, and alleges customer confusion arising from FNB South Dakota's website, which uses the "circle 1" logo with "First National Bank" rather than "First National Bank South Dakota." In the current action FNB Sioux Falls also alleges customer confusion arising from SPC Inc. d/b/a First National Merchant Solutions sending mailings to FNB Sioux Falls' customers and using the terms "First National", and "First National Bank." and referring to First National Merchant Solutions as being "a wholly owned subsidiary of First National Bank", a bank which has been "family owned and run for over 138 years," this being potentially confusing with FNB Sioux Falls which is generally known to have been family owned and run by the Baker family for many years. FNB Sioux Falls further alleges customer confusion arising from First National Bank of Omaha sending mailings using "First National Bank"within the 10-mile area in which FNB Sioux Falls is using its trademarks. Although a "Retirement Plan Insights" mailing under the caption "First National Bank," and mailed to Mr. William L. Baker would not have confused Mr. Baker, the President of FNB Sioux Falls, as to the source of the proposed services, it does raise a factual issue as to confusion caused to customers and

---

[5]The current action contain a claim for violation of a federal trademark in violation of 15 U.S.C. § 1114.

potential customers within the 10-mile area in which FNB Sioux Falls is using its trademarks. See Exhibit Z to Doc. 146-25.

In considering the origin and motivation of the two lawsuits the Court observes that although the origin of each is the use of the trademarks "First National", and "First National Bank," the manner in which the trademarks are allegedly infringed has changed substantially. The evidence of confusion and the likelihood of confusion has also changed substantially from the earlier trial. Also, the ramifications on likelihood of confusion caused by FNB South Dakota's use of "First National Bank South Dakota" in publications and advertising that also use "First National" and "First National Bank" was not involved in, let alone the focus of the earlier litigation.

In addressing whether a convenient trial unit may be formed from the sets of facts from both cases, the Court observes that the current causes of action could not have been included in the earlier trial because activities in issue had not yet occurred. The Court also observes that relevant facts, such as location and activities of FNB South Dakota have changed since the earlier court trial.

The final Consideration of the factor of § 24 of The Restatement (Second) of Judgments is whether the treatment of the facts as a unit conforms to the parties' expectations or business understanding or usage. The Court does not find it reasonable for FNB South Dakota to expect the 1997 decision of this Court to bar any further claims against it or its related entities regardless of the change of facts and circumstances. The changes of location and advertising and promotional activities in the cases at hand are particularly significant because in trademark and unfair competition litigation the facts must be analyzed on a case by cases basis to make a determination of the likelihood of consumer confusion. *See Minarik*, 223 F.Supp.2d at 341. After considering all the relevant facts, authorities and factors of § 24 of The Restatement (Second) of Judgments, this Court rejects the Defendants' res judicata argument.

### WHETHER FNB SIOUX FALLS' CONFUSION LOG IS ADMISSIBLE EVIDENCE?

FNB Sioux Falls has submitted a confusion log that was maintained by its employees from December of 2005 through early May of 2007, and which purportedly records over 1,000 instances of confusion by customers of both FNB Sioux Falls and FNB South Dakota, as well as the public and certain vendors. Defendants maintain that the confusion log relied upon by FNB Sioux Falls in resistance to the motion for partial summary judgment is not credible evidence of trademark

9

confusion, but is a "poorly designed and self-serving document, designed and implemented by Plaintiff's trial counsel, which was intended to maximize the alleged instances of actual confusion." Defendants further maintain that the confusion log is inadmissible as double hearsay. Doc. 120.

FNB Sioux Falls maintains that the confusion log and statements therein are probative and admissible on the issues of harm to FNB Sioux Falls and as proof of actual consumer confusion. FNB Sioux Falls argues that the statements are not hearsay as they "are not being offered to show the truth of the matter - that there is a relationship between the banks- but to show that consumers thought the banks were related." FNB Sioux Falls at oral argument cited *Rainforest Cafe, Inc. v. Amazon, Inc.*, 86 F.Supp.2d 886, 902 (D.Minn. 1999), for the proposition that the evidence in the confusion log is not inadmissible hearsay, because it demonstrates rather than explicitly asserts confusion. FNB Sioux Falls further argues that the statements in the log are admissible to show the consumers' state of mind and are admissible under the business records and present sense impression exceptions to the hearsay rule. Doc. 129.

Not surprisingly, both sides present case law that supports their positions on the admissibility or inadmissibility of the confusion log. The division of authority on the admissibility of such purported evidence of actual confusion was summarized as follow by the district court in the Southern District of Florida:

> Courts are divided on whether actual confusion evidence, in the form of testimony by the recipient of the statements of confused consumers, constitutes inadmissible hearsay evidence. Some courts have held that such testimony is hearsay which falls under no exception. *Programmed Tax Sys., Inc. v. Raytheon Co.*, 439 F.Supp. 1128, 1131 n. 1 (S.D.N.Y.1977)(declarants may describe own state of mind regarding confusion, but cannot attest to out-of-court declarant's state of mind). Other courts have admitted the evidence without consideration of the hearsay problem. *E.g., University of Ga. Athletic Ass'n v. Laite*, 756 F.2d 1535, 1546 (11th Cir.1985)(professor's testimony that he received approximately 10 to 15 inquiries in person or by phone from concerned fans was evidence of actual confusion); *Scandia Down Corp. v. Euroquilt, Inc.*, 772 F.2d 1423, 1430 (7th Cir.1985)(Scandia's employees testified to more than 180 incidents of customer confusion). Several courts addressing the issue have concluded that the employee's testimony is not hearsay because it is not offered to prove the truth of the matter asserted. *See, Int'l Kennel Club [of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1090 (7th Cir. 1988)](plaintiff's public relations official testified that she received calls on an almost daily basis from people who

> expressed confusion about plaintiff's relationship to the defendant); *Israel Travel Advisory Serv. Inc., v. Israel Identity Tours*, 1994 WL 30984 (N.D.Ill.1994)(holding that evidence of customer's question is admissible in Lanham Act cases to show actual confusion); *Mile High Upholstery Fabric Co. v. General Tire & Rubber Co.*, 221 U.S.P.Q. 217, 223 (N.D.Ill.1983); *Armco, Inc., v. Armco Burglar Alarm Co.*, 693 F.2d 1155, 1160 n. 10 (5th Cir.1982)(testimony about phone calls and conversations was not offered to show that Armco and Armco Burglar Alarm were the same business, but to show that people thought they were). Some courts have concluded that a statement by a customer offered to establish confusion in a trademark litigation is offered to prove the truth of the belief of the declarant and is therefore properly classified as hearsay but that the statement is admissible because it falls within Fed.R.Evid. 803(3), the state of mind exception. *Ocean Bio-Chem, Inc. v. Turner Network Television*, 741 F.Supp. 1546 (S.D.Fla.1990)(citing 4 J. Weinstein, M. Berger, D.Epstein, Weinstein's Evidence (1988 and Supp.1990); *Source Serv. Corp. v. Source Telecomputing Corp.*, 635 F.Supp. 600, 612 (N.D.Ill.1986)(employee's affidavit regarding instances of customer confusion admissible under state of mind exception to hearsay rule); *Freddie Fuddruckers, Inc. v. Ridgeline, Inc.*, 589 F.Supp. 72, 76 (N.D.Tex.1984)(hearsay letters and statements of customers are admissible in evidence under Fed.R.Evid. 803(3) where they reveal the then existing state of mind of the writers or speakers).

*Popular Bank of Florida v. Banco Popular de Puerto Rico*, 9 F.Supp.2d 1347, 1360-1361 (S.D.Fla.1998). The district court in *Popular Bank of Florida* found testimony of an employee that she received over 3,000 phone calls by confused customers admissible as falling within the state of mind exception of Fed.R.Evid. 803(3), which ruling the court described as being in accordance with the greater weight of authorities.

The Eighth Circuit Court of Appeals has commented on evidence similar to that contained in the confusion log in this case. In *Vitek Systems, Inc. v. Abbott Laboratories*, 675 F.2d 190 (8th Cir. 1982), the plaintiff in a trademark infringement case presented seven witnesses who were its employees or consultants and who testified that customers had told them that they were confused by the similarity of the marks in issue. The Eighth Circuit observed, "Such testimony was hearsay in nature and the district court properly gave it little weight." 675 F.2d at 193. In *Duluth News-Tribune, a Div. of Northwest Publications, Inc. v. Mesabi Publ'g Co.*, 84 F.3d 1093 (8th Cir.1996), a newspaper publisher who brought a trademark infringement and trademark dilution action against some of its competitors and was resisting a motion for summary judgment, presented evidence of

11

misdirected mail and phone calls. The Eighth Circuit held that the evidence of misdirected mail and phone calls failed to raise a genuine factual dispute. The Eighth Circuit explained, "[T]he vague evidence of misdirected phone calls and mail is hearsay of a particularly unreliable nature given the lack of an opportunity for cross-examination of the caller or sender regarding the reason for the 'confusion.'" The Eighth Circuit further explained that it found such evidence to be deminimis in that it demonstrated inattentiveness of the caller or sender rather than actual confusion. 84 F.3d at 1098 (citing J. Thomas McCarthy, Trademarks and Unfair Competition, § 23.2, p. 52, n. 1 (2d ed. 1984)).

A resistance to summary judgment must be based on facts which would be admissible in evidence. *Postscript Enter. v. City of Bridgeton*, 905 F.2d 223, 225 (8th Cir. 1990). The Court rejects FNB Sioux Falls' claim that the confusion log is not hearsay and rejects the argument that evidence falls under the business record exception of FED.R.EVID. 803(6), because a review of the record demonstrates that the confusion log was prepared in anticipation of litigation and not in the ordinary course of business. *See Scheerer v. Hardee's Food Systems, Inc.*, 92 F.3d 702, 706-707 (8th Cir. 1996). However, the Court concludes that some of the information contained in the confusion log is admissible under the hearsay exception in FED.R.EVID. 803(3) as evidence of then existing state of mind.

The Court is cognizant of the concerns expressed by the Defendants regrading the nature of the evidence contained in the confusion log and has taken that into consideration in determining how much weight should be given to this evidence. As one commentator has surmised, "The mere fact that out-of-court statement indicating actual confusion may be admissible does not mean that such statements will necessarily establish actual confusion." *See* Mark D. Robbins, *Actual Confusion in Trademark Infringement Litigation: Restraining Subjectivity Through a Factor-Based Approach to Valuing Evidence*, 2 NW. J. TECH. & INTELL. PROP. 1, *100 (Spring, 2004). When weighing the evidence contained in the confusion log as well as other evidence of purported actual confusion, the Court will continue to consider whether the persons purportedly confused are deemed relevant persons, whether the amount of evidence of actual confusion is of a sufficient quantity, the sophistication, intelligence and level of care or attentiveness exercised by such purportedly confused persons, and the potential biases and credibility of such persons.

12

## WHETHER ANY MATERIAL ISSUE OF FACT EXISTS WITH RESPECT TO FNB SIOUX FALLS' CLAIMS AGAINST SPC FOR SERVICE MARK INFRINGMENT AND FALSE DESIGNATION UNDER THE LANHAM ACT, AND SERVICE MARK INFRINGEMENT AND UNFAIR COMPETITION UNDER COMMON LAW?

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)[6], contains two prohibitions with respect to goods or services, a prohibition of false designations of origin and a prohibition of false descriptions or representations. An owner of a mark is entitled to injunctive relief if the use of that mark violates either prohibition and causes a likelihood of confusion among consumers. If, however, the use of that mark by another violates either prohibition and causes actual confusion, the owner is entitled to damages. *Co-Rect Products, Inc. v. Marvy! Adver. Photography, Inc.*, 780 F.2d 1324, 1329-1330 (8th Cir. 1985). Minimal market penetration alone is not sufficient to establish infringement of a common-law trademark; rather, such market penetration must be significant enough to pose a real likelihood of confusion among consumers in the area. *Sweetarts v. Sunline, Inc.*, 436 F.2d 705 (8th Cir. 1971). To successfully establish service mark infringement under the common law and the Lanham Act FNB Sioux Falls bears the burden of proving that SPC "would create a likelihood of confusion deception, or mistake among an appreciable number of ordinary consumers as to the source of or association between the banks' services." *First Nat'l Bank, In Sioux Falls v. First Nat'l Bank, South Dakota*, 153 F.3d 885 888 (8th Cir. 1998). Defendants

---

[6].15 U.S.C. § 1125(a)provides in part:
> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

13

contend that this Court should find that SPC is entitled to judgment as a matter of law and find that no likelihood of confusion exists between the service mark "First National Merchant Solutions" and FNB Sioux Falls' service marks.

To determine whether a likelihood of confusion exists, this Court must consider the following factors: the strength of the plaintiff's service or trademark; the competitive proximity of the parties' marks; the alleged infringer's intent to confuse; the degree of care reasonably expected of potential customers; the similarity between the parties' marks; and evidence of actual confusion. *See Duluth News-Tribune v. Mesabi Pub. Co.*, 84 F.3d 1093, 1096 (8th Cir.1996); *Anheuser-Busch, Inc. v. Balducci Publications*, 28 F.3d 769, 774 (8th Cir.1994). The ultimate determination of likelihood of confusion is not to be mechanically determined through a rigid application of these factors, but since the inquiry is case-specific, different factors may be accorded more weight in different cases. *Kemp v. Bumble Bee Seafoods, Inc.*, 398 F.3d 1049, 1054 (8th Cir. 2005).

<u>The strength of the plaintiff's service or trademark</u>

Defendants concede that this Court has previously determined that Plaintiff's service marks are descriptive marks which have attained secondary meaning, and that the service marks are "quite strong within a ten mile radius of plaintiff's main office." However, Defendants maintain that the terms "First" and "First National" are exceedingly weak and the fact that numerous financial institutions have registered trademarks with the United States Patent and Trademark Office which incorporate the words "First" and "First National" demonstrates the inherent weakness of FNB Sioux Falls' marks, and that these marks are entitled to an extremely limited scope of protection. The Court in its 1997 Memorandum Opinion rejected a very similar argument, and in rejecting this argument relied on *First Federal Savings and Loan Ass'n of Council Bluffs v. First Federal Savings and Loan Ass'n. of Lincoln*, 929 F.2d 382, 383-84 (8th Cir. 1991)( The term "First Federal" in a savings and loan association's service mark had acquired sufficient secondary meaning to be protectable in the county in which it did business when it and its competitor were located within one block of each other).This Court, which is now presented with new circumstances concerning location and confusion, is again rejecting the argument that because "First" and "First National" are commonly registered trademarks in the banking industry they cannot be strong marks in this case. They were, and apparently still appear to be strong marks.

14

<u>The competitive proximity of the parties' marks</u>

Defendants submit that SPC and FNB Sioux Falls do not compete. Defendants characterize FNB Sioux Falls as a full service bank that offers a full array of banking services to consumers in Sioux Falls and the surrounding communities. Defendants contend that FNB Sioux Falls "farms out" the services which are similar to those provided by SPC. Defendants contend that by contrast, SPC is a nationwide processor of credit card and debit card transactions that maintains an inside sales team of approximately 80 representatives, has a regional sales force of 70 to 80 representatives, and is located in 33 states across the country. Defendants thus contend that SPC competes with large national banks, not FNB Sioux Falls, and that SPC derives less than one percent of its revenue from the Sioux Falls market.

FNB Sioux Falls has submitted evidence, however, that for 16 years it has provided the banking services of credit card processing for merchants. FNB Sioux Falls contends that SPC d/b/a First National Merchant Solutions competes with FNB Sioux Falls in the Sioux Falls market. While the Court recognizes the differences in the size and scope of the different businesses, it still finds that competitive proximity of the parties' marks provides some evidence of likelihood of confusion.

<u>The alleged infringer's intent to confuse</u>

Although proof of bad intent is not required for success in a trademark infringement or unfair competition claim, the absence of such intent is a factor to be considered by the Court. *See Davis v. Walt Disney Co.*, 430 F.3d 901 (8th Cir. 2005). Defendants rely on the deposition testimony of a FNB Sioux Falls employee in maintaining that FNB Sioux Falls has acknowledged that it has no evidence SPC was trying to intentionally confuse FNB Sioux Falls' customers. Defendants also point out that SPC is part of a family of banking related entities that operate under a "First National" derivative trademark – such as its parent company, First National Bank of Omaha, and that SPC uses the "First National Merchant Solutions" service mark in the same distinctive type style as its parent company, and also uses the distinctive "Circle 1" logo in connection with the trademark so as to avoid confusion.

FNB Sioux Falls contends, however, that the intent to confuse was demonstrated by an incident in which a sales representative for SPC d/b/a First National Merchant Solutions contacted Family Dental Center, a customer of FNB Sioux Falls' merchant services. According to the affidavit

15

submitted by one of the employees of Family Dental Center, the sales representative led her to believe he was working for FNB Sioux Falls. The employee further maintained that after she set up an appointment with the sales representative she called FNB Sioux Falls and found that the sales representative was not employed by FNB Sioux Falls. The Family Dental Center employee states in her affidavit that even though the appointment was then cancelled the sales representative for SPC d/b/a First National Merchant Solutions showed up at Family Dental Center.

FNB Sioux Falls also relies upon marketing material of SPC d/b/a First National Merchant Solutions (Doc 164-24) which refers to First National Merchant Solutions as being a wholly owned subsidiary of First National Bank and characterizes First National Bank as being family owned. The Court notes that this marketing material also contains the circle 1 logo and an Omaha address. After considering all of the evidence before it the Court finds that while there exists some circumstantial evidence of the intent to deceive, this factor favors the Defendants.

<u>Degree of care reasonably expected of potential customers</u>

Defendants correctly contend that the level of consumer sophistication is even higher in this case than it was in CIV 95-4116, where this Court found and the Eighth Circuit affirmed the finding that consumers tend to exercise a relatively high degree of care in selecting banking services, and that as a result, bank customers are more likely to notice what, in other contexts, may be relatively minor differences in names. The Court notes, however, that in the earlier case this Court also credited expert testimony that consumers exposed to very similar advertisements may still become confused as to the source of advertisements. *See First Nat'l Bank, In Sioux Falls v. First Nat'l Bank, South Dakota,* 153 F.3d at 888. The Court finds that the consumers of SPC's services, although some of them may be from small and mom and pop businesses, are as a group more sophisticated business operators who accept payment card transactions from customers, and that although FNB Sioux Falls has presented evidence on this factor, the "degree of care reasonably expected of potential customers" factor favors the Defendants in this case.

<u>Evidence of actual confusion</u>

Although actual confusion is not essential to a finding of trademark infringement, it can be positive proof of likelihood of confusion. *SquirtCo v. Seven-Up Co.*, 628 F.2d 1086, 1091(8th Cir. 1980)(citing *Standard Oil Co. v. Standard Oil Co.*, 252 F.2d 65, 74 (10th Cir. 1958) ). FNB Sioux

16

Falls claims two instances of actual confusion caused by SPC d/b/a First National Merchant Solutions . In one circumstance that occurred on June 25, 2007, a customer of SPC mistakenly called FNB Sioux Falls to add additional services. The second instance was the previously described incident with one of FNB Sioux Falls' customers, Family Dental Center.

Defendants contend that this small number of instances of alleged actual confusion should be dismissed as inconsequential or *de minimis*. Defendants also contend that the incident with Family Dental Center does not evidence actual trademark confusion but is instead evidence of a recognition on the part of the customer that she was not dealing with her normal service provider and that further information was required. Defendants cite *Nora Beverages, Inc. v. Perrier Group of America, Inc.*, 269 F.3d 114, 124 (2d Cir. 2001), for the following proposition:"Inquiries about the relationship between an owner of a mark and an alleged infringer do not amount to actual confusion. Indeed, such inquiries are arguably premised upon a *lack* of confusion between the products such as to inspire the inquiry itself." Defendants also quote *Duluth News-Tribune, a Div. of Northwest Publications, Inc. v. Mesabi Publ'g Co.*, 84 F.3d 1093, 1098 (8th Cir.1996), for the following observation: "The question to the reporter who was asked to specify which News-Tribune he worked for indicates a distinction in the mind of the questioner, rather than confusion." While there is some merit to Defendant's argument, the Court notes that in reviewing the affidavit of the Family Dental Center employee, Vucky Levene, it appears that she did not distinguish the two services based on the service marks but made an inquiry because the normal procedure for setting up an appointment was not followed.

Although the Court agrees that at this stage of the proceedings there is no substantial evidence of actual confusion with regard to SPC d/b/a First National Merchant Solutions, the Court does not believe that this warrants granting summary judgment in favor of SPC d/b/a First National Merchant Solutions in consideration of the following reasoning:

> Recognizing that it is very difficult, and often impossible, to obtain reliable evidence of actual confusion of buyers, the courts often make statements to the effect that: "Actual confusion or deception of purchasers is not essential to a finding of trademark infringement or unfair competition, it being recognized that reliable evidence of actual confusion is practically almost impossible to secure." Similarly, "[t]he law recognizes that random instance of confusion often go unreported or unrecorded." Persons who are truly confused will often never be aware of the

17

>deception. Others who were confused and later learned of their deception will often not bother to report the fact. Therefore, it is error for a court to find that plaintiff failed to prove injury caused by actual confusion and conclude that plaintiff has failed to prove a violation of the Lanham Act.

4 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 23:12 (4th Ed. 2007).

The determination of likelihood of confusion is fact intensive, and although some of the factors appear to favor the Defendants at this stage of the proceedings, FNB Sioux Falls has presented evidence supporting to some degree all of the relevant factors. After considering all the relevant factors and evidence of record the Court finds that there are genuine issues of material fact with regard to FNB Sioux Falls' claims against SPC for service mark infringement and false designation under the Lanham Act, and service mark infringement and unfair competition under the common law, and denies summary judgment for Defendants on these causes of action.

## WHETHER FNB SIOUX FALLS' CLAIM FOR VIOLATION OF PRIOR INJUNCTION IS AN IMPROPER CAUSE OF ACTION ENTITLING DEFENDANTS TO JUDGMENT AS A MATTER OF LAW?

Defendants contend that their research has failed to produce any instances in which a court has recognized a claim for violation of a prior injunction, and that the Eighth Circuit has enforced violations of injunctive orders almost exclusively through contempt of court proceedings. Defendants therefore conclude that FNB Sioux Falls' remedy, if any, for violation of the 1997 injunction must must lie in an action to hold FNB South Dakota in contempt of the injunction, and for this reason Defendants are entitled to judgment as a matter of law on Count 6, the violation of injunction claim.

FNB Sioux Falls cites *Brummer v. Stokebrand*, 601 N.W.2d 619, 638 (S.D. 1999), as authority that although a civil contempt proceeding may be brought by an order to show cause, it may also be entitled within a civil action. This Court agrees that the claim for violation of an earlier injunction could be brought either as a count within a civil action requesting the Court to hold a party in contempt or as a request for declaratory relief. *See, e.g., Sherwood Medical Industries, Inc. v. Deknatel, Inc.*, 512 F.2d 724 (8th Cir. 1975) (patent case following well settled rule that the Declaratory Judgment Act should be liberally construed to accomplish its purpose of providing a speedy and inexpensive method of adjudicating legal disputes without invoking coercive remedies).

Genuine issues of material fact exist with regard to this cause of action and Defendants' motion for partial summary judgement on this issue is denied.

## WHETHER DEFENDANTS ARE ENTITLED TO RELIEF AT THIS TIME ON THEIR MOTION REGARDING EXPERT WITNESS REPORTS?

Defendants have submitted a document entitled "Defendants' Motion Regarding Expert Witness Reports." Doc. 125. The motion states that Defendants intend to file a pretrial motion with respect to the deficiencies of the Mantis survey and expert report. The supporting memorandum makes skeletal assertions regarding Defendants' position without providing supporting authority. The motion is little more than notice that the Defendants intend to take action regarding their position on the expert survey and report. The Court assumes that the basis for Defendants' motion will be reasserted with authority in a motion in limine or trial brief which will render the pending motion moot, and the Court is denying the motion on this basis.

Accordingly,

**IT IS HEREBY ORDERED**:

(1)  that Defendants' Motion for Partial Summary Judgment (Doc. 74) is granted to the extent that summary judgment is granted in favor of Defendants and against FNB Sioux Falls on FNB Sioux Falls' dilution claim;

(2)  that Defendants' Motion for Partial Summary Judgment is otherwise denied: and

(3)  that Defendants' Motion Regarding Expert Witness Reports (Doc. 125) is denied without prejudice to reassert the motion with accompanying authorities.

Dated this 31st day of March, 2008.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: Colleen Schulte
(SEAL)    DEPUTY

19